# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0939V
UNPUBLISHED

| | |
|---|---|
| OLIVIA RENCHEN,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 5, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Tetanus Diphtheria acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Naseem Kourosh, U.S. Department of Justice, Washington, DC,* for Respondent.

**DECISION AWARDING DAMAGES**[1]

On July 31, 2020, Olivia Renchen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration (SIRVA) after receiving a Tdap vaccination on July 26, 2019. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Although Respondent conceded entitlement, the parties could not agree to damages, and thus the matter was the subject of a "Motions Day" hearing.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$79,137.07**, representing $78,000.00 for actual pain and suffering, and $1,137.07 for past unreimbursable expenses**.**

## I.     Relevant Procedural History

More than a year after the case's initiation, on October 20, 2021, Respondent filed a Rule 4(c) Report in which he stated that "compensation under the Vaccine Act is appropriate in this case." ECF 20. After the Ruling on Entitlement was issued, however, the parties reported an impasse in their attempts to informally resolve the issue of Petitioner's pain and suffering.[3] ECF 23. After giving the parties an opportunity to file written briefs on this issue, I scheduled this matter for an expedited hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 33. That hearing was held on April 29, 2022. ECF 36.

In her brief, Petitioner requests that I award her $90,000.00 for past pain and suffering. ECF 27. Respondent proposes that I award the lesser amount of $52,500.00. ECF 28. The parties do not dispute that $1,137.07 in actual unreimbursable expenses should also be awarded.

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4).

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical

---

[3] The parties have reached an agreement on the amount of Petitioner's out-of-pocket expenses.

2

formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In doing so, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on April 29, 2022. I also consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely on my experience in adjudicating those claims. However, I ultimately base my determination on the circumstances of this case.

### A. The Duration and Severity of Petitioner's SIRVA Injury

Petitioner was approximately 29-weeks pregnant when she received a Tdap vaccination in her left arm. Ex 2 at 2; Ex 3 at 334. Approximately one week later, she presented to her primary care provider with complaints of left arm pain since vaccination, rated as 8-10/10. Ex 4 at 11. Physical examination at this visit revealed widespread tenderness to palpation in the left shoulder area, pain with range of motion exercises, and decreased left arm strength, and Petitioner was prescribed a five-day course of oral steroids. *Id*. at 14-15. Petitioner continued to complain of left arm pain at an August 2019 appointments with her obstetrician and with Dr. Adam Metzler, an orthopedic surgeon. Ex 3 at 344; Ex 5 at 9. Dr. Metzler's physical examination revealed pain over the lateral aspect of the left shoulder and 4/5 global strength, and he administered a corticosteroid injection. Ex 5 at 10.

After this visit, Petitioner did not receive treatment for her SIRVA for approximately five months.[5] On January 17, 2020, Petitioner returned to Dr. Metzler, at which time she reported good pain relief after the cortisone injection but also stated she experienced a "flare" in her pain some time after giving birth in October 2019. Ex 6 at 13. Dr. Metzler's physical examination showed "excellent" range of motion and "good" strength." *Id*. Due to Petitioner's continued complaints of pain, Dr. Metzler referred Petitioner for an MRI, which showed mild-to-moderate rotator cuff tendinosis and mild bursitis, with no evidence of a rotator cuff tear. *Id*. at 11-12. Two months later, in March 2020, Petitioner returned to Dr. Metzler with reports of another "flare" of her shoulder pain. *Id*. at 7. While Petitioner continued to complain of tenderness to palpation in the lateral aspect of the shoulder and AC joint, her shoulder strength remained 5/5. *Id*. Dr. Metzler administered a second steroid injection at this visit and provided Petitioner with a home exercise program. *Id*. at 8. Petitioner has not received any additional treatment for her SIRVA.

In her affidavits, Petitioner alleges that her SIRVA symptoms interfered with her ability to perform her activities of daily living and to care for her newborn and toddler, which caused emotional distress. Ex 1 at ¶ 20; Ex 10 at ¶¶ 3-5. Petitioner also avers that

---

[5] Petitioner attributes this treatment gap to giving birth to and subsequently caring for her newborn. Ex 1.

while she "felt better" after the second steroid injection, she "never made a full recovery" and continues to experience occasional pain, for which she takes over-the-counter medication and periodically performs stretches recommended by Dr. Metzler. Ex 10 at ¶¶ 6-9.[6] Finally, Petitioner alleges that she did not seek out additional treatment after March 2020 because Dr. Metzler recommended surgery, which she was not interested in pursuing. Ex 1 at ¶ 18; Ex 10 at ¶ 6.

### B. Comparison to Other Awards

As I informed the parties during the Motions Day hearing, the question in this case is not whether Petitioner is entitled to *any* compensation for her pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties, each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Ms. Renchen's personal circumstances.

Petitioner argues that her case was comparable to *Desrosiers*,[7] *Harper*,[8] and *Hein*,[9] as the petitioners in these cases were pregnant and the compensation awarded reflected consideration of the pregnancy. However, in contrast to the petitioner in *Desrosiers*, who was informed "there was little [her doctor] could do" while she was pregnant,[10] Ms. Renchen was able to take advantage of some of the treatment options typically offered to SIRVA patients, including prescription medication and steroid injections. Furthermore, the petitioners in *Harper* and *Hein* experienced more significant symptoms, and received more intensive treatment for a longer duration than Petitioner.[11]

---

[6] Nathan Lawson, Petitioner's fiancé, submitted an affidavit corroborating many of Petitioner's allegations regarding her difficulty performing activities of daily living and caring for her children. Ex 12.

[7] *Desrosiers v. Sec'y of Health & Human Servs.*, No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for past and future pain and suffering).

[8] *Harper v. Sec'y of Health & Human Servs.*, No. 18-202V, 2021 WL 5231980 (Fed. Cl. Spec. Mstr. Oct. 8, 2021) (awarding $92,000.00 for actual pain and suffering).

[9] *Hein v. Sec'y of Health & Human Servs.*, No. 19-1943V, 2021 WL 4805232 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $93,000.00 for past pain and suffering).

[10] *Desrosiers*, 2017 WL 5507804, at *5 (stating that the awarded amount "accounts for the fact that petitioner . . . could not take advantage of the typical treatment of a shoulder injury").

[11] *See Harper*, 2021 WL 5231980, at *2-3 (describing a petitioner who was hospitalized for four days for treatment of severe pain after vaccination, an intermittent treatment course of several years, and significant abnormal findings on physical examination such as severely decreased passive range of motion); *Hein*,

Respondent offered his own counter-comparables, although they too were not precisely on point. The petitioners in *Murray*[12] and *Clendaniel*[13] received relatively conservative treatment, as was the case with Petitioner, but neither petitioner was pregnant – and I find that context has significance in evaluating pain and suffering in this case. Furthermore, while the petitioner in the third case referenced by Respondent, *Bossenbroek*, was two months post-partum at the time of vaccination, her only treatment consisted of six physical therapy sessions and she experienced almost complete resolution of her symptoms after six months, suggestive of an even more mild injury course than Petitioner.[14]

Overal, as noted during the hearing I find it reasonable to consider Petitioner's pregnancy as a factor in determining the appropriate pain and suffering award. This is consistent with the decisions in *Desrosiers*, *Harper*, and *Hein*, where the petitioners' pregnancies provided context for gaps in treatment and treatment decisions. However, in this case the fact of pregnancy does not support an especially high pain and suffering award. Even after Petitioner gave birth, she continued to opt for conservative care and ceased treatment entirely only eight months after her SIRVA.[15] Therefore, I find that an award of $78,000.00 for pain and suffering, slightly lower than the amount awarded in *Desrosiers*, is appropriate compensation in this case.

## IV.   Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $78,000.00 represents a fair and appropriate amount of**

---

2021 WL 4805232, at *5-6 (describing a petitioner whose MRI showed moderate tendinosis and bursitis with a partial thickness tear and who sought out treatment for pain for greater than two years).

[12] *Murray v. Sec'y of Health & Human Servs.*, No 18-534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $65,000.00 for actual pain and suffering).

[13] *Clendaniel v. Sec'y of Health & Human Servs.*, No 20-213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021).

[14] *Bossenbroek v. Sec'y of Health & Human Servs.*, No. 17-122V, 2020 WL 2510454, at *10-11 (Fed. Cl. Spec. Mstr. Apr. 3, 2020) (awarding $50,000.00 for past pain and suffering).

[15] As discussed above, in her affidavits, Petitioner alleges that she stopped treatment because she was not interested in pursuing surgery. However, while Dr. Metzler's records reflect a discussion of possible surgical options, there is no indication that surgery was his only recommendation or that he advised Petitioner that additional conservative treatment would be unsuccessful in alleviating her symptoms.

**compensation for Petitioner's actual pain and suffering.**[16] **I also find that Petitioner is entitled to $1,137.07 in actual unreimbursable expenses. I therefore award Petitioner a lump sum payment of $79,137.07 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision.[17]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[16] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.